Filed 10/3/22 P. v. White CA3

NOT TO BE PUBLISHED

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(Sacramento)

----

| | |
|---|---|
| THE PEOPLE, | C094499 |
| Plaintiff and Respondent, | |
| v. | (Super. Ct. No. 04F07255) |
| JOHN DOUGLAS WHITE, | |
| Defendant and Appellant. | |

Defendant John Douglas White appeals from the trial court's denial of his Penal Code section 1172.6[1] petition for resentencing on his murder conviction.  He contends the trial court should not have summarily denied the petition.

Finding merit in his contention, we will reverse the order denying defendant's section 1172.6 petition and remand the matter with directions for the trial court to issue an order to show cause under section 1172.6, subdivision (c) and hold a hearing pursuant to subdivision (d).

---

[1] Undesignated statutory references are to the Penal Code.

1

BACKGROUND

The following background is derived from this court's opinion in defendant's direct appeal. (*People v. Campaz* (Apr. 27, 2010, C056880 & C058484) [nonpub. opn.] (*Campaz*).)

Maintenance workers found a body in a park restroom. The victim had died of multiple stab wounds. (*Campaz, supra*, C056880 & C058484.)

Codefendant Roberto Moreno Montoya testified it was defendant's idea to kill the victim. According to Montoya, defendant said to Montoya and codefendant Carlos Tomas Campaz, Jr., that the victim raped his sister, so the victim " 'had to go.' " Defendant "brainstormed various scenarios but settled on luring the victim to the park on the pretext that someone wanted to buy drugs from the victim." Defendant showed Montoya and Campaz two knives he was carrying. (*Campaz, supra*, C056880 & C058484.)

After doing drugs with the victim, Montoya drove the victim to the park in defendant's pickup truck. At the park they met up with defendant and Campaz. They all went into the public restroom to smoke methamphetamine where, according to Montoya, defendant struck the victim in the face and stabbed him in the chest. Campaz punched the victim in the stomach. Defendant pushed the victim into Montoya, who stabbed the victim in the stomach with a sheath knife. The victim fell to the ground. Defendant repeatedly urged Montoya to "finish him off." (*Campaz, supra*, C056880 & C058484.)

The jury saw a videotaped police interview in which defendant admitted using the park restroom just before the killing but denied killing the victim. Defendant admitted being angry with the victim over use of defendant's vehicle and failure to pay money owed for drugs, but defendant said the victim did not know his sister. In the interview defendant declined to implicate anyone else. (*Campaz, supra*, C056880 & C058484.)

However, defendant testified at trial that Campaz and Montoya were responsible for the killing, and all defendant did was dispose of the weapons. Defendant said he

2

thought they were going to the park for drugs. When he went into the bathroom, Campaz and Montoya had already killed the victim. The three of them left in a panic and defendant later threw their knives in the river and burned their clothes. (*Campaz, supra*, C056880 & C058484.)

Defendant, Montoya and Campaz were charged with murder and tried together with separate juries. Montoya's jury found him guilty of second degree murder and found true an allegation that he personally used a knife. Campaz's jury found him guilty of first degree murder but found not true allegations that he personally used a knife and lay in wait. Defendant's jury deadlocked, and the trial court declared a mistrial. (*Campaz, supra*, C056880 & C058484.)

Defendant was tried a second time. On retrial, Montoya testified as a prosecution witness, and the prosecution dropped a natural and probable consequences theory. (*Campaz, supra*, C056880 & C058484.) The trial court instructed the jury on first and second degree murder (CALCRIM No. 520) and aiding and abetting first and second degree murder (CALCRIM No. 401). The jury found defendant not guilty of first degree murder but guilty of second degree murder, with a finding that he did not personally use a knife. The trial court sentenced defendant to an aggregate 15 years to life in state prison. (*Campaz, supra*, C056880 & C058484.)

On direct appeal, defendant raised claims of evidentiary and instructional error and challenged the trial court's refusal to release juror identifying information. This court affirmed the judgment. (*Campaz, supra*, C056880 & C058484.)

DISCUSSION

Defendant contends the trial court should not have summarily denied his section 1172.6 petition for resentencing.

A

Effective January 1, 2019, Senate Bill No. 1437 (2017-2018 Reg. Sess.) narrowed accomplice liability for murder under the felony-murder rule and the natural and probable

3

consequences doctrine. (*People v. Lewis* (2021) 11 Cal.5th 952, 957 (*Lewis*); *People v. Gentile* (2020) 10 Cal.5th 830, 842-843 (*Gentile*), superseded by statute as stated in *People v. Hola* (2022) 77 Cal.App.5th 362, 370.) As relevant here, it eliminated the natural and probable consequences doctrine by adding section 188, subdivision (a)(3), which states that malice shall not be imputed to a person based solely on their participation in a crime. (*Gentile*, at p. 843.)

Senate Bill No. 1437 also added section 1172.6,[2] which created a procedure whereby persons convicted of murder under a now-invalid felony-murder or natural and probable consequences theory may petition the trial court to vacate the murder conviction and resentence the petitioner on any remaining counts. (*Lewis, supra*, 11 Cal.5th at p. 959; *Gentile, supra*, 10 Cal.5th at p. 843.) A petitioner is eligible for relief if they (1) were charged with murder by means of a charging document that allowed the prosecution to proceed under a theory of felony murder or murder under the natural and probable consequences doctrine; (2) were convicted of first or second degree murder; and (3) could no longer be convicted of first or second degree murder due to the changes to sections 188 and 189 effectuated by Senate Bill No. 1437. (§ 1172.6, subd. (a).)

If the petition contains all the required information, including a declaration that petitioner was convicted of murder and is eligible for relief (§ 1172.6, subd. (b)(1)(A)), section 1172.6, subdivisions (b) and (c) require the trial court to appoint counsel to represent the petitioner, if requested; to direct the prosecutor to file a response to the petition and permit the petitioner to file a reply; and to determine if the petitioner has made a prima facie showing that petitioner is entitled to relief. (*Lewis, supra*, 11 Cal.5th at pp. 959-960.)

---

[2] Effective June 30, 2022, former section 1170.95 was recodified without substantive change to section 1172.6. (Stats. 2022, ch. 58, § 10.)

"Like the analogous prima facie inquiry in habeas corpus proceedings, ' "the court takes petitioner's factual allegations as true and makes a preliminary assessment regarding whether the petitioner would be entitled to relief if his or her factual allegations were proved. If so, the court must issue an order to show cause." ' " (*Lewis, supra*, 11 Cal.5th at p. 971.) While the trial court must accept a petitioner's allegations as true because the prima facie evidentiary bar is low, the trial court may properly engage in a limited examination of the record of conviction so that the trial court can quickly dispose of petitions that are "clearly meritless." (*Ibid.*) Trial courts are to refrain from engaging in " 'factfinding involving the weighing of evidence or the exercise of discretion' " (*id.* at p. 972), because under the current "framework the section [1172.6], subdivision (c) inquiry is a test of the petitioner's pleaded allegations, not an inquiry into the truth of those allegations and the credibility of the evidence on which they may rely." (*People v. Davenport* (2021) 71 Cal.App.5th 476, 483.)

Thus, a trial court may deny relief at this stage only if it determines petitioner is ineligible for relief as a matter of law. (*Lewis, supra*, 11 Cal.5th at pp. 971-972.) A petitioner is ineligible for relief as matter of law only if the record of conviction conclusively establishes the petitioner was convicted under a theory of liability that remains viable under current law. (*People v. Duchine* (2021) 60 Cal.App.5th 798, 815.)

Effective January 1, 2022, Senate Bill No. 775 (2021-2022 Reg. Sess.) further amended section 1172.6. In addition to expanding the list of eligible crimes, the new legislation clarified the procedures, the rules of evidence, and the burden of proof in adjudicating resentencing petitions. Most germane to this appeal, the following was added to section 1172.6, subdivision (a): "A person convicted of felony murder or murder under the natural and probable consequences doctrine *or other theory under which malice is imputed to a person based solely on that person's participation in a crime* . . . may file a petition with the court that sentenced the petitioner to have the petitioner's . . . conviction vacated." (Italics added.)

5

## B

Defendant acknowledges the jury was not instructed on felony murder or the natural and probable consequences doctrine. Nevertheless, relying on *People v. Langi* (2022) 73 Cal.App.5th 972 (*Langi*) and *People v. Powell* (2021) 63 Cal.App.5th 689 (*Powell*), he contends the trial court erred in summarily denying his petition.

At the prima facie stage, the only question is whether the record of conviction establishes as a matter of law that defendant was found guilty on a still-valid theory. But as explained in *Powell, supra*, 63 Cal.App.5th at pages 712-714, and *Langi, supra*, 73 Cal.App.5th at page 983, the standard jury instructions do not adequately explain the mental state required to convict a person of aiding and abetting an implied malice murder. The People acknowledge that CALCRIM Nos. 401 and 520, with which defendant's jury was instructed, are substantially the same as CALJIC Nos. 3.01 and 8.31, which were given to the *Langi* jury. In *Powell*, this court considered CALCRIM No. 401. (*Powell,* at p. 714; cf. *People v. Glukhoy* (2022) 77 Cal.App.5th 576, 592, review granted July 27, 2022, S274792 [error to give standard instructions for aiding and abetting implied malice murder].) The standard instructions do not indicate that in order to establish that defendant personally acted with malice, the jury must find that defendant aided the perpetrator's act with knowledge of the danger to, and with conscious disregard for, human life. (See *Langi*, at p. 982; see also *Powell*, at p. 714; see also *Glukhoy*, at p. 592.)

Accordingly, this record does not establish as a matter of law that defendant was convicted on a currently valid theory. Although the People argue the evidence nevertheless shows defendant personally harbored malice, such a determination would require factfinding and weighing of evidence and could not be made as part of the threshold prima facie determination.

DISPOSITION

The order denying defendant's section 1172.6 petition is reversed.  The matter is remanded with directions for the trial court to issue an order to show cause under section 1172.6, subdivision (c) and hold a hearing pursuant to subdivision (d).


                                                                /S/
                                                             MAURO, J.


We concur:


     /S/
ROBIE, Acting P. J.


     /S/
KRAUSE, J.